UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MICHAEL BLACKSHEAR,

                    Plaintiff,

v.                                    Case No. 3:08-cv-927-J-34JRK

SGT. BAILEY, et al.,

                    Defendants.
_____


## ORDER[1]

### I. Status

        Plaintiff Michael Blackshear, an inmate of the Florida penal
system proceeding pro se and in forma pauperis, initiated this
action by filing a Civil Rights Complaint Form (Complaint) (Doc.
#1) under 42 U.S.C. § 1983 on September 22, 2008, in accordance
with the mailbox rule.  In support of the Complaint, Plaintiff has
submitted exhibits (Plaintiff's Ex.).  In the Complaint, Plaintiff
names the following individuals as Defendants in this action: (1)
Sergeant Bailey; (2) Sergeant Harper; (3) Officer Garza; (4)
Officer Harris; (5) Officer Dugger; (6) Lieutenant Chestnut; and
(7) Nurse Wilson.  Plaintiff claims that the Defendants used
unnecessary and excessive force upon him, denied him proper medical
attention for the resulting injuries, confiscated his personal and

_____

        [1] This is a "written opinion" under § 205(a)(5) of the E-
Government Act and therefore is available electronically.  However,
it has been entered only to decide the matters addressed herein and
is not intended for official publication or to serve as precedent.

legal property and retaliated against him for his filing of grievances.

This cause is before the Court on Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. #31) with exhibits (hereinafter Defendants' Ex.). Since Plaintiff is appearing pro se, the Court advised him of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond. See Order of Special Appointment; Service of Process Upon Defendants; Notice to Plaintiff (Doc. #6) (setting forth the provisions of Rule 56 of the Federal Rules of Civil Procedure), filed October 7, 2008, at 3-4, paragraph 9; Summary Judgment Notice (Doc. #32), filed April 15, 2009. On May 1, 2009, Plaintiff filed his Sworn Affidavit/Declaration in Opposition to Defendants' Motion for Summary Judgment (Doc. #33) and Appendix (Doc. #34) with exhibits (App. P. Ex.). Thus, Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. #31) is ripe for review.

## II. Standard of Review

"[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citation omitted). To survive a motion to dismiss, Plaintiff must plead "enough facts

to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

On the other hand, "[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Crawford v. Carroll</u>, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and <u>Wilson v. B/E/Aerospace, Inc.</u>, 376 F.3d 1079, 1085 (11th Cir. 2004)). "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." <u>Allen v. Bd. of Pub. Educ. for Bibb County</u>, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593–94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. 2548).[2]

<u>Id</u>. at 1314; <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be

---

[2] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

### III. Plaintiff's Allegations and Claims

Plaintiff Blackshear alleges that, on April 7, 2008, Defendants Bailey and Harper verbally threatened him in front of his cell door (#1105) because he had inquired about inmates' recreation privileges. Complaint at 14. Blackshear notes that the dormitory's camera would show the Defendants' threatening gestures (Defendant Bailey's waving his handcuffs and Defendant Harper's pointing his finger at Plaintiff's cell door window). Id.

Plaintiff claims that, on the following day April 8, 2008, between 8:00 and 8:30 a.m., Defendant Garza and Officer Lewis escorted Plaintiff from his cell to a holding cell for a mental health call out. Id. Plaintiff notes that the dormitory's camera would show that cells #1102 and #1103 were "skip[p]ed on purpose" so that Defendants Harper and Bailey could carry out the threats they made on April 7th. Id. Since Officer Lewis did not want to be a part of the incident, only Defendant Garza continued to escort Plaintiff to the holding cell where Defendant Harper awaited Plaintiff's arrival. Id. As Plaintiff entered the holding cell, Defendant Garza followed Plaintiff inside the cell, and Defendant Harper stated, "I told you that I was going too [sic] beat your old ass if you came out [of] your cell." Id.

Plaintiff describes the first assault as follows. While Plaintiff was in full restraints unable to defend himself, Defendant Harper struck Plaintiff in the face under his left eye and the right side of his head with a closed fist and/or a left and right combination of closed fist blows. Id. at 15. Defendant Garza kicked Plaintiff, and Defendant Harper struck Plaintiff several more times in his face and head. Id. Plaintiff was knocked down onto the concrete floor by their kicking and stomping. Id. After several minutes, Defendants Bailey and Harris entered the holding cell to join in on the stomping and kicking; Defendant Bailey told the officers to stomp "[Plaintiff's] ass with the flat of their boots" to prevent any serious injuries. Id. Plaintiff contends that the attack was unprovoked and unwarranted and that he was helpless on the floor. Id. When someone yelled that Defendant Chestnut was coming, Defendants Bailey, Harris and Harper left, while Defendant Garza continued to stomp on Plaintiff, warning him not to file a grievance. Id.

Shortly after the incident, Defendant Chestnut, the lieutenant, entered the holding cell and ordered Plaintiff to stand upright. Id. In a sluggish and dizzy manner, Plaintiff pulled himself up from the floor, but as Defendant Chestnut escorted him down the hallway, Plaintiff collapsed. Id. Plaintiff notes that the dormitory's camera would show that he was "immediately lifted and dragged back inside the holding cell and thrown onto the

concret[e] bench." Id. Defendant Chestnut ordered Plaintiff to stand, but he was unable to do so. Id. at 16. Therefore, she ordered use of a security shield. Id. Defendant Nurse Wilson came to check Plaintiff's vital signs and then returned a short time later to check again. Id. Defendant Chestnut then ordered that a video recorder be used rather than the security shield. Id.

Defendant Bailey and another officer lifted Plaintiff and placed him in a wheelchair, and a restraint was tied around him due to the "continual sporadic jerking motion" from the head and body blows that he had received. Id. With Officer Turner's using the handheld video camera during the trip to the medical building, Plaintiff was escorted by wheelchair to the medical clinic where his vital signs were taken. Id. Plaintiff was lifted out of the wheelchair into a bed for a medical examination. Id. He informed the staff that he had severe excruciating pain in his head, face and back. Id. The staff noted that he had only minor bruises with facial and head swelling, but no serious injuries. Id. at 17. With Officer Turner handling the video camera, Defendants Bailey and Dugger escorted Plaintiff, in a wheelchair, back to the dormitory. Id. On the way, Defendant Bailey told Plaintiff that he would "get it for taking them through this crisis." Id.

Following is Plaintiff's description of the details of the second assault. Off camera, Defendants Bailey and Dugger became so annoyed with Plaintiff for being in a "mental deranged stupor" from

the first assault that they maliciously "snatched" him from the wheelchair onto the concrete floor with the cable cord that was attached to the handcuffs and dragged him on the floor.  <u>Id</u>.  As Plaintiff tried to stand up, he stumbled forward.  <u>Id</u>.  According to Plaintiff, the dormitory's camera will show his head sticking outside the door only about knee-high in height.  <u>Id</u>.  Plaintiff further alleges that the wing's camera will show Defendants Bailey and Dugger pushing Plaintiff back inside the cell and pulling on the cable cord connected to his handcuffs to pull his arms up to the cell door flap.  <u>Id</u>.

Once in Plaintiff's cell, Defendant Bailey grabbed Plaintiff by the throat "forcefully cutting off [Plaintiff's] air supply to render him "helplessly in a semi-conscious state," while Defendant Dugger, with all of his body weight, placed his knees onto Plaintiff's stomach.  <u>Id</u>.  Then, the handcuffs were removed while Plaintiff was lying on the floor of the cell.  <u>Id</u>. at 18.

According to Plaintiff, the dormitory's camera will show officers refusing to provide his lunch tray and Mr. Cooley stopping at his cell door, at which time Plaintiff informed him of the assault and his need for medical attention.  <u>Id</u>.  Plaintiff states that he stopped Mr. Cooley so he could "get a good look" at Plaintiff's injuries.  <u>Id</u>.  Plaintiff declared a medical emergency, but was told that he had already been seen by the medical staff. <u>Id</u>.

When the shift changed at 4:00 p.m., the officers refused to provide his dinner tray, which, according to Plaintiff, can be seen on the dormitory's camera. Id. Thereafter, when the duty nurse provided Plaintiff with his medications, Plaintiff showed him his bleeding mouth and swollen face and head and declared another medical emergency; however, the nurse told Plaintiff to use the sick call procedure. Id.

On April 9, 2008, according to Plaintiff, the dormitory camera will show that Plaintiff stopped Sergeant Barton and declared a medical emergency. Id. at 19. Later, Officer Cruise informed Plaintiff that Defendant Nurse Wilson stated that she could not find his medical chart. Id.

On April 10, 2008, Officer Christy and Defendant Dugger reported that Plaintiff refused his mental health callout. Id. As such, Plaintiff's mental health counselor (Ms. Thompson) visited Plaintiff at his cell door. Id. According to Plaintiff, the hallway camera will show her visit. Id. Later, Officer Christy and Defendant Dugger returned to escort Plaintiff to see Ms. Thompson, who saw Plaintiff's bruised and swollen left eye and right side of his head, a cut inside his mouth, scratch marks on both scarred and swollen wrists (from Defendants' pulling on the cable cord during the second assault inside his cell), "a scar of his legs" and bruised back from being kicked and stomped. Id. When Ms. Thompson asked Defendant Nurse Wilson to see Plaintiff,

Nurse Wilson gave Plaintiff several packs of Tylenol for pain; Plaintiff was then escorted back to his cell. <u>Id</u>.

On April 11, 2008, the hallway camera will show Plaintiff being escorted out of his cell for a medical callout. <u>Id</u>. at 20. In the medical clinic, Plaintiff showed the nurse the deep cut on the upper left side of his mouth, but the nurse concluded it was not serious enough for stitches and suggested that he needed to rinse his mouth with a salt solution for healing. <u>Id</u>. The nurse tried to reach Defendant Nurse Wilson in O-dormitory, but the line was busy. <u>Id</u>. Plaintiff was escorted back to his dormitory. <u>Id</u>.

On April 14, 2008, Plaintiff was served with four disciplinary reports for the following infractions: (1) battery or attempted battery upon a correctional officer (Defendant Bernie Harper) on April 8, 2008, at 8:35 a.m. (Log #213-080917); (2) battery or attempted battery upon a correctional officer (Defendant DeWayne Bailey) on April 8, 2008, at 10:00 a.m. (Log #213-080918); (3) disobeying a verbal order given by Officer Thornton to back away from his tray flap to receive the evening meal on April 8, 2008, at 5:20 p.m. (Log #213-080948); and (4) disobeying a verbal order given by Officer Christie on April 9, 2008, at 1:50 p.m. (Log # 213-081135).[3] <u>Id</u>. at 21. Plaintiff was found guilty of each infraction based on the officers' statements. <u>Id</u>.

---

[3] <u>See</u> Plaintiff's Ex. 1; Defendants' Exs. K, L and M. The disciplinary reports for battery did not result in the loss of gain time. <u>See</u> Defendants' Exs. K; L.

In support of his Complaint, Plaintiff has submitted the affidavits of inmates Osmond Wilson (Inmate #169321), David Anderson (Inmate #Q07836) and Kendall Antonio Smith (Inmate #R33362) as well as multiple grievances addressing his claims of staff abuse and the denial of medical attention.

### IV. Law and Conclusions

### A. Eighth Amendment Claim of Excessive Use of Force Against Defendants Bailey, Harper, Garza, Harris, Dugger and Chestnut

The Eleventh Circuit has set forth the standard for an excessive use of force claim for an inmate:

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case). If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily shocks the conscience. See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (stating that the Eighth and Fourteenth Amendments give equivalent protections against excessive force). If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

In support of Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. #31), Defendants have submitted their own Affidavits, <u>see</u> Defendants' Exs. B, C, D, E, F and G; the Affidavit of Inspector Snow, <u>see</u> Defendants' Ex. I; and Plaintiff's medical and disciplinary records. In sum, the Defendants state that Plaintiff Blackshear exhibited combative and disorderly behavior during the incidents, that their actions in subduing him were not excessive, that only a minimal amount of force necessary to end his disruptive and aggressive behavior was used, that they did not hit, punch, kick or stomp or observe other staff hit, punch, kick or stomp, that they did not retaliate against him for any reason and that they did not confiscate any grievances he may have filed. <u>See</u> Defendants' Exs. B, C, D, E, F and G. Defendants note that Blackshear was found guilty of two disciplinary infractions, both for battery on a correctional officer. The first occurred when Blackshear initiated the events by lunging into Defendant Harper, striking him in the chest area and grabbing his shirt. Defendants' Ex. K. And, the second occurred when Blackshear lunged at Defendant Bailey, striking him in the thigh area. Defendants' Ex. L.

In response to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment and supporting affidavits, Plaintiff has filed a sworn Affidavit (<u>see</u> Appendix (Doc. #34), Exhibit 2), which mirrors the allegations in the Complaint. Since

Plaintiff and Defendants have submitted affidavits which plainly contradict each other's assertions with respect to whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm, the Defendants' motion for summary judgment should be denied with respect to Plaintiff's claims of excessive use of force upon him by the Defendants.  In reviewing a motion for summary judgment, "[i]f there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." Allen v. Board of Public Educ. for Bibb County, 495 F.3d at 1314 (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003)).  If Plaintiff's evidence is to be believed, there was no need to apply any force and he was attacked "maliciously and sadistically for the very purpose of causing harm." Cockrell v. Sparks, 510 F.3d at 1311 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  Thus, Defendants' Alternative Motion for Summary Judgment will be denied with respect to Plaintiff's Eighth Amendment claim of excessive use of force against Defendants Bailey, Harper, Garza, Harris, Dugger and Chestnut because there are genuine issues of material fact that prevent the entry of summary judgment.

## B. Eighth Amendment Claim of Deliberate
## Indifference to Serious Medical Needs

As noted previously, Plaintiff claims that the Defendants denied him medical care for the injuries he sustained in the use of force incidents on April 8, 2008. Plaintiff alleges that the attacks resulted in facial swelling, a reddened eye, a cut inside his mouth, abrasions on his wrists and bodily pain and bruising. However, the record reflects that the Defendants, and specifically Defendant Nurse Sidra Wilson, were not deliberately indifferent to Plaintiff's serious medical needs. Defendant Nurse Wilson, in her Affidavit, avers that she conducted three medical examinations upon Blackshear. The first examination was conducted on April 8, 2008, at approximately 8:40 a.m., after the first use of force. See Defendants' Ex. H. She noted that Blackshear, who was "uncooperative" in the examination, "had minimal injuries including slight swelling on the left side of his head, his left eye was red and he had [an] abrasion to his right wrist apparently from the hand restraints." Id. In her medical opinion, Blackshear's "minimal injuries" did not need the immediate attention of a doctor and therefore he could be returned to his cell. Id. A brief time later, after Blackshear fell onto the floor, she examined him again, noting "no new injuries." Id. However, "in an abundance of caution," she referred Blackshear to the Urgent Care Area for further examination and evaluation by a clinician. Id. Defendant

Wilson accompanied Blackshear to the Urgent Care Area where Dr. Aviles examined him. Id.

Defendant Nurse Wilson conducted a third medical examination after another incident of force occurred that same day; she noted "no new injuries." Id. At that time, Blackshear did not inform her of any mouth pain. Id. Defendant Nurse Wilson concluded:

> My medical decisions were based on my objective assessment of Blackshear's physical condition and my observations that Blackshear's injuries were minimal and not serious. I was not deliberately indifferent to Blackshear's medical needs. I in fact referred him to the Urgent Care Area just to be sure he had no serious injury. As the medical record reflects, his injuries were minimal, and he was returned to the dormitory.

Id.

Defendants have also submitted the relevant portions of Plaintiff's medical records and an Affidavit from Dr. Frank Johanson, M.D., Assistant Deputy Director of the Florida Department of Corrections' Office of Health Services, in which he evaluates and interprets these records. In his Affidavit, he states:

> I have reviewed Michael Blackshear's claims relevant to the April 8, 2008 incident and his medical care. I have also reviewed his medical records and documents pertaining to the incident. My review of this medical record reflects the following:
>
> A) On April 8, 2008, Senior License[d] Practical Nurse Wilson provided Blackshear a post use of force examination. She noted that his injuries consisted of slight swelling to the left side of his head, a reddened left eye

- 14 -

and abrasions to his right wrist from his
metal hand restraints.

B) Shortly thereafter, Senior License[d]
Practical Nurse Wilson provided a second
medical examination to Blackshear after he
fell on the floor while being escorted back to
his cell. Senior License[d] Practical Nurse
Wilson documented that no new injuries were
observed[,] however[,] [she] referred
Blackshear to the Urgent Care Area for further
examination by a clinician.

C) The record reflects that Blackshear
was then examined by Dr. Aviles.[4] Dr. Aviles
determined that Blackshear was not in need of
further medical attention. During the
examinations [sic] Blackshear's pupils were
equal, round, reactive to light and
accommodation, his tympanic membranes were
intact bilaterally, his mouth was without
blood, he had a full range of motion in all
extremities, his lungs were clear and his
heart was without murmur or arr[h]ythmia
(abnormal beat).

D) Following a second incident of force,
Blackshear was again examined by Senior
License[d] Practical Nurse Wilson. She was
unable to find that he had any new injury and
determined that he was not in need of a
doctor's attention at that time.

E) Blackshear was provided another
medical examination on April 11, 2008.[5] The
record reflects that Blackshear complained of
pain on the right side of his head, pain in
the lower back, and pain in the upper left
inside mouth. The assessment noted
Blackshear'[s] previous examination where it
was documented he had mild edema on the left

---

[4] See Defendants' Ex. N, Emergency Room Record, dated April 8,
2008.

[5] See Defendants' Ex. N4, Emergency Room Record, dated April
11, 2008.

temple, his pupils were equal, round, reactive to light and accommodation, his tympanic membranes were intact bilaterally, his mouth was without blood, he had a full range of motion in all extremities, his lungs were clear and his heart was without murmur or arr[h]ythmia (abnormal heartbeat). The medical examination noted that Blackshear had a non-bleeding, non[-]draining superficial laceration in the inside upper left cheek with no sign or symptom of infection. While Dr. Aviles was notified, it was determined that no further treatment was necessary, that Blackshear could be returned to his cell, and he was advised to seek medical care if his condition became worse.

3. Based upon my review of the medical record in this case, the injuries Blackshear may have incurred during the use of force are at most minimal and superficial. Objective medical evidence does not exist to support any claim of injury above and beyond the minimal and superficial injuries documented in his medical record. The medical record of a reddened eye, slight swelling of the left side of the head, abrasions on the wrist from hand restraints and a superficial laceration in the mouth are inconsistent with the claims of being punched, kicked or stomped and consistent with the force that was documented in restraining Blackshear from his aggressive behavior.

4. It is difficult to assess the origin or validity of complaints of headaches or back pain. Examination of Blackshear's pupils and tympanic membranes were normal and would not support the existence of a significant head injury. The medical record does not reflect Blackshear sought medical intervention relevant to claims of back pain or for any claims of injuries from the incident after April, 2008. This would support a finding that Blackshear suffered at most only minimal injuries.

Defendants' Ex. J.

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)).  First, the plaintiff must satisfy the objective component by showing that he had a serious medical need.  <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id</u>. (citing <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)).  In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id</u>. (citation and internal quotations marks omitted).

<u>Brown</u>, 387 F.3d at 1351.  Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, No. 08-16795, 2010 WL 693629 (11th Cir. Mar. 2, 2010) (per curiam) (setting forth the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citation omitted).

In _Estelle_[6], the Supreme Court established that "deliberate indifference" entails more than mere negligence. _Estelle_, 429 U.S. at 106, 97 S.Ct. 285; _Farmer_,[7] 511 U.S. at 835, 114 S.Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in _Farmer_ by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." _Farmer_, 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). In interpreting _Farmer_ and _Estelle_, this Court explained in _McElligott_[8] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." _McElligott_, 182 F.3d at 1255; _Taylor_,[9] 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

_Farrow v. West_, 320 F.3d 1235, 1245-46 (11th Cir. 2003).

This Court finds that the Defendants have met their initial burden of showing this Court that there are no genuine issues of material fact that should be decided at trial (with respect to Plaintiff's claim that the Defendants were deliberately indifferent

---

[6] _Estelle v. Gamble_, 429 U.S. 97 (1976).

[7] _Farmer v. Brennan_, 511 U.S. 825 (1994).

[8] _McElligott v. Foley_, 182 F.3d 1248 (11th Cir. 1999).

[9] _Taylor v. Adams_, 221 F.3d 1254 (11th Cir. 2000).

to Plaintiff's serious medical needs). Plaintiff's medical records and the Affidavit of Dr. Frank Johanson demonstrate that Plaintiff Blackshear did not have any serious medical needs after the incidents of force on April 8, 2008.

Because the Defendants have met this initial burden, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial. Plaintiff has failed to provide any medical evidence to support his claim that he had a serious medical need at the time in question. In the Complaint and opposition to the summary judgment, Plaintiff acknowledges that he received medical attention three times from Nurse Wilson, once by Dr. Aviles in the Urgent Care Area and then three days later in the medical clinic on April 11, 2008, at which time a nurse concluded that his mouth injury was not serious enough for stitches, but merely needed rinsing with a salt solution for healing.

As noted previously, a medical need is considered to be serious if it is a condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. And, in either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm. Here, Plaintiff has not provided any competent evidence to rebut

the Defendants' evidence, which establishes that whatever injuries Plaintiff may have suffered were relatively minor and that leaving his injuries unattended did not pose a substantial risk of serious harm.  See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-88 (11th Cir.1994) ("delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation.").

Nurse Wilson conducted three medical examinations of Blackshear on April 8, 2008, and in an abundance of caution referred him to the Urgent Care Area for further evaluation. Defendants' Ex. H.  Plaintiff was examined again on April 11, 2008. Defendants' Ex. J.  Further, based on the undisputed evidence, the other Defendants were aware that Plaintiff had been examined after each incident of force.   Thus, Plaintiff received five medical examinations, at which it was concluded that Plaintiff did not have a serious medical need.   Any claim of a serious injury or serious medical need is simply not supported by the medical records.

Even assuming arguendo that Plaintiff had a serious medical need, the Defendants did not have subjective knowledge of a risk of serious harm to Plaintiff.   Nurse Wilson noted only minimal injuries after the first use of force and no new injuries after the second use of force, and entries in Plaintiff's medical records did not document any serious medical conditions.   Five medical examinations (four on the day of the incident and one three days

later) uncovered no evidence of a serious medical need. Thus, there were no circumstances from which the Defendants could infer that Plaintiff had a serious medical need after the incidents of force. Plaintiff has failed to refer the Court to any contrary evidence that would create a genuine issue of material fact as to the question of whether Defendants had subjective knowledge that Blackshear was exposed to a substantial risk of serious harm based on his minimal injuries. Accordingly, Defendants' Alternative Motion for Summary Judgment will be granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs against the Defendants.

### C.  42 U.S.C. § 1997e(e)

In his Complaint, Plaintiff Blackshear requests compensatory and punitive damages "and such other further relief as this Honorable Court deem[s] proper and just." Complaint at 22. Defendants contend that Plaintiff has not suffered an injury sufficient to withstand 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

> "In order to avoid dismissal under § 1997e(e),
> a prisoner's claims for emotional or mental
> injury must be accompanied by allegations of
> physical injuries that are greater than de
> minimis." Mitchell v. Brown & Williamson
> Tobacco Corp., 294 F.3d 1309, 1312-13 (11th

> Cir. 2002) (citation omitted). We have
> previously held that a forced "dry shave" only
> amounted to a <u>de minimis</u> injury. <u>Harris v.</u>
> <u>Garner</u>, 190 F.3d 1279, 1286-87 (11th Cir.
> 1999), <u>vacated</u>, 197 F.3d 1059, <u>reinstated</u> <u>in</u>
> <u>relevant part</u>, 216 F.3d 970, 972 (11th Cir.
> 2000) (<u>en banc</u>); <u>see also</u> <u>Nolin v. Isbell</u>, 207
> F.3d 1253, 1258 n. 4 (11th Cir. 2000) (bruises
> received during an arrest were non-actionable
> <u>de minimis</u> injury). Even though § 1997e(e)
> bars damages for mental or emotional injury,
> it does not affect the availability of
> declaratory or injunctive relief. <u>See</u> <u>Harris</u>,
> 190 F.3d at 1288.

<u>Mann v. McNeil</u>, No. 09-10995, 2010 WL 26222, *1 (11th Cir. Jan. 6, 2010) (not selected for publication in the Federal Reporter).

This Court concludes that further factual development is needed to determine whether Plaintiff's injuries were <u>de minimis</u>.[10] Even if he sustained only <u>de minimis</u> injuries, construing Plaintiff's Complaint liberally, Plaintiff could still be entitled to nominal damages if he prevailed at trial. Thus, 42 U.S.C. § 1997e(e) does not provide a basis for dismissing this case at this time. Therefore, Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment will be denied with respect to Plaintiff's request for compensatory and punitive damages.

### D. Property Confiscation

Plaintiff claims that Lieutenant Chestnut caused his personal and legal property to be seized while he was receiving medical

---

[10] Although the Court has previously found that Plaintiff's injuries appeared relatively minor, that is not the same as <u>de minimis</u>.

attention.  See Complaint at 11; Plaintiff Blackshear's Sworn Affidavit/Declaration in Opposition to Defendants' Motion for Summary Judgment at 15.  Defendants contend that Plaintiff's claim of property confiscation by Lieutenant Chestnut should be dismissed for failure to exhaust his administrative remedies.[11]

The Prison Litigation Reform Act (PLRA) amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e to read as follows:

> (a)  Applicability of Administrative Remedies.  No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008), cert. denied, 129 S.Ct. 733 (2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006)

---

[11] See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008) ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'") (footnote and citations omitted), cert. denied, 129 S.Ct. 733 (2008).

("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Furthermore, "the exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile." Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (citing Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998)).

Defendants contend that Plaintiff has not provided and the Defendants have been "unable to find in his grievances and grievance appeals where he has properly raised any claim about confiscation of his property" on April 8, 2008. See Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment at 10. Thus, they argue that Plaintiff's claim of property confiscation by Lieutenant Chestnut should be dismissed for failure to exhaust his administrative remedies. Id.

Although given the opportunity, Plaintiff has not specifically addressed Defendants' contention that the property confiscation claim should be dismissed for failure to exhaust. Thus, taking Plaintiff's allegations as true (as contained in the Complaint and attachments), the claim is due to be dismissed for Plaintiff's failure to properly exhaust the available administrative remedies. See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (explaining the two-step process in deciding a motion to dismiss for failure to exhaust administrative remedies and noting that,

since the district court had concluded, at the first step, that
even taking Plaintiff's version of the facts as true he had not
exhausted his administrative remedies, the court never reached the
second step of resolving any factual disputes between the parties
about exhaustion). Accordingly, the Court agrees with Defendants'
contention that Plaintiff's claim of property confiscation by
Lieutenant Chestnut has not been properly exhausted, and therefore,
Defendants' Motion to Dismiss will be granted to the extent that
the claim against Lieutenant Chestnut will be dismissed for failure
to exhaust the issue.

### E. Verbal Abuse

Plaintiff claims that, on April 7, 2008, Defendants Bailey and
Harper verbally threatened him and made threatening gestures
(Defendant Bailey's waving his handcuffs and Defendant Harper's
pointing his finger at Plaintiff's cell door window). See
Complaint at 14. Plaintiff thereafter alleges that Defendants
Bailey and Harper continued the verbal abuse and carried out their
threats the next day in two separate incidents of force. Id. at
14-15, 17-18. Defendants contend that his allegations fail to
raise a claim under 42 U.S.C. § 1983. See Defendants' Motion to
Dismiss or in the Alternative Motion for Summary Judgment at 10.

As a general rule, allegations of mere threatening language
and gestures in the prison setting do not state a claim of federal
constitutional dimension. See Hernandez v. Fla. Dep't of Corr.,

281 Fed. Appx. 862, 866 (11th Cir. 2008) (per curiam) (not selected for publication in the Federal Reporter) (citing <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats[,] and verbal abuse alone is insufficient to state a constitutional claim."), <u>cert</u>. <u>denied</u>, 129 S.Ct. 1402 (2009). However, here, Plaintiff Blackshear's allegations of verbal abuse and threats by Defendants Bailey and Harper state a claim because Plaintiff also alleges they carried out these threats the very next day by using unnecessary force upon him. <u>See</u> App. P. Ex. 2, Affidavit at 1. Therefore, Defendants' Alternative Motion for Summary Judgment will be denied with respect to Plaintiff's claim of verbal abuse.

## F. Retaliation and Grievance Tampering

Plaintiff claims that the Defendants assaulted him and confiscated his grievances as retaliation for his filing grievances. First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment. <u>Moulds v. Bullard</u>, No. 08-10706, 2009 WL 2488182, *4 (11th Cir. Aug. 17, 2009) (quotations and citation omitted) (not selected for publication in the Federal Reporter).

> "To state a retaliation claim, the commonly
> accepted formulation requires that a plaintiff
> must establish first, that his speech or act
> was constitutionally protected; second, that
> the defendant's retaliatory conduct adversely
> affected the protected speech; and third, that
> there is a causal connection between the
> retaliatory actions and the adverse effect on
> speech." <u>Bennett v. Hendrix</u>, 423 F.3d 1247,
> 1250 (11th Cir. 2005). [Plaintiff's] complaint
> must contain enough facts to state a claim of
> retaliation by prison officials that is
> "plausible on its face." <u>Bell Atl. Corp. v.</u>
> <u>Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1974,
> 167 L.Ed.2d 929 (2007).

<u>Douglas v. Yates</u>, 535 F.3d 1316, 1321 (11th Cir. 2008).

Defendants acknowledge that writing grievances is constitutionally protected speech under the First Amendment. <u>See</u> Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment at 20. However, they argue that "[Plaintiff's] complaint is devoid of any specifics as [to] what grievances he has filed and against who[m] or what issue," and therefore there is no causal connection between the Defendants' alleged actions and any grievances he may have submitted prior to the April 8, 2008, incidents. <u>See</u> <u>id</u>. at 20, 21.

"To establish a claim for retaliation, the inmate must show a causal connection between his protected conduct and the prison official's action. <u>See</u> <u>Smith v. Sec'y, Fla. Dep't of Corr.</u>, No. 09-11423, 2009 WL 4893301, *1 (11th Cir. Dec. 21, 2009) (citing <u>Farrow</u>, 320 F.3d 1248-49) (not selected for publication in the Federal Reporter). In Defendants' affidavits supporting the

- 27 -

summary judgment motion, they state they "have not retaliated against Blackshear for any reason." Defendants' Exs. B, C, D, E and F, Affidavits of Defendants Harper, Garza, Harris, Bailey and Dugger. In response to Defendants' affidavits, Plaintiff relies upon the conclusory allegations contained within his Complaint.

Summary judgment is proper on Plaintiff's retaliation claim since he "has not established a causal relationship" between his filing of grievances and the Defendants' alleged actions. <u>Farrow</u>, 320 F.3d at 1249 (citing <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991) ("If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence.")). "The evidence presented cannot consist of conclusory allegations or legal conclusions." <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991) (citation omitted), <u>cert</u>. <u>denied</u>, 502 U.S. 1048 (1992). Because Plaintiff has failed to come forward with any evidence of a causal connection between the Defendants' alleged actions and any grievances that Plaintiff may have submitted prior to April 8, 2008, Defendants' Alternative Motion for Summary Judgment will be granted with respect to the retaliation claim against Defendants Harper, Garza, Harris, Bailey and Dugger.

Plaintiff alleges that Defendants Bailey, Harper, Garza, Harris and Dugger confiscated Plaintiff's grievances submitted on April 21, 2008, concerning the excessive use of force on April 8, 2008. See Complaint at 12-13; P. Ex., Letter to the Inspector General, dated June 20, 2008. Plaintiff asserts that an unnamed prison staff member working the day shift (8:00 a.m. until 4:00 p.m.) placed Plaintiff's grievances into a grievance box, but Plaintiff did not receive a reply from the Department. P. Ex., Letter to Chief Inspector General, dated June 20, 2008. Plaintiff claims that the Defendants must have confiscated his grievances since they were working the same shift that day as the staff member who had picked up the grievances for departmental processing. Id.

Defendants contend that Plaintiff's "allegations of grievance tampering do not rise above pure speculation based on his claim that he submitted grievances during the same shift as the Defendants were working." See Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment at 21. In support of the summary judgment motion, Defendants aver that they "have not confiscated any grievances [Blackshear] may have filed." Defendants' Exs. B, C, D, E and F. In response, Plaintiff refers to his June 2008 letter sent to the Inspector General and states that the wing's video camera will show that Plaintiff placed grievances in the grievance box. See Sworn Affidavit/Declaration in Opposition to Defendants' Motion for Summary Judgment at 6, 8.

Indeed, Defendants have met their initial burden of showing the absence of a genuine issue of material fact, and Plaintiff has not come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Therefore, Defendants' Alternative Motion for Summary Judgment will be granted with respect to the grievance tampering claim against Defendants Harper, Garza, Harris, Bailey and Dugger.

## G. Qualified Immunity

Defendants contend that they are entitled to qualified immunity.

> To receive qualified immunity, [a] public official must establish that he was engaged in a "discretionary function" at the time he committed the allegedly unlawful act. Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004) . . . . If the official demonstrates that he was engaged in a discretionary function, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity. Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003). This requires plaintiff to satisfy the two-part test prescribed by the Supreme Court in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under Saucier, a plaintiff must first show that the defendant violated a constitutional right and then demonstrate that the constitutional right was clearly established at the time of the alleged wrongful act. 533 U.S. at 201, 121 S.Ct. at 2156. If a court, after viewing all the evidence in the light most favorable to the plaintiff and drawing all inferences in his favor, determines that the plaintiff has satisfied these two requirements, the defendant may not obtain qualified immunity. Holloman, 370 F.3d at 1264.

<u>Bryant v. Jones</u>, 575 F.3d 1281, 1295 (11th Cir. 2009), <u>cert</u>. <u>denied</u>, 78 U.S.L.W. 3375 (U.S. Feb. 22, 2010) (No. 09-743).

It is undisputed that the Defendants were engaged in discretionary functions during the events in question. Additionally, this Court has found that Defendant Wilson did not violate Plaintiff's constitutional rights. Thus, Defendant Wilson is entitled to qualified immunity.

However, the remaining Defendants' qualified immunity argument assumes that the facts are as alleged by Defendants. Plaintiff has presented evidence that contradicts the assertions of Defendants Bailey, Harper, Garza, Harris, Dugger and Chestnut. Thus, this Court opines that there remain genuine issues of material fact as to whether Defendants Bailey, Harper, Garza, Harris, Dugger and Chestnut violated Plaintiff's clearly established constitutional rights. For this reason, they are not entitled to qualified immunity.

## H. Pendent State Law Claim

Under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over state law claims related to the federal court action. Defendants contend that since Blackshear has failed to state a claim under the Eighth Amendment or First Amendment, then accordingly, the Court should decline to exercise supplemental jurisdiction over his state law claim. Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment

at 23.  Since Plaintiff's Eighth Amendment claim (excessive use of force and verbal abuse) survives the summary judgment stage and the state law claim of assault and battery arises from the same nucleus of operative facts as the Eighth Amendment claim, this Court will exercise supplemental jurisdiction over Plaintiff's state law claim.  See Complaint at 10 (state law claim of assault and battery under Florida Statute § 768.28(9)(a)).

Therefore, it is now

**ORDERED:**

1.  Defendants' Motion to Dismiss (Doc. #31) is **GRANTED** to the extent that Plaintiff's claim of property confiscation by Lieutenant Chestnut is dismissed for failure to exhaust the issue and **DENIED** regarding Plaintiff's request for compensatory and punitive damages.

2.  Defendants' Alternative Motion for Summary Judgment (Doc. #31) is **GRANTED** with respect to Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs against Defendants DeWayne Bailey, Bernie Harper, Abraham Garza, Joshua Harris, Alan Dugger, Felicia Chestnut and Sidra Wilson; **GRANTED** with respect to Plaintiff's First Amendment retaliation claim against Defendants Bailey, Harper, Garza, Harris and Dugger; **GRANTED** with respect to Plaintiff's claim of grievance tampering against Defendants Bailey, Harper, Garza, Harris and Dugger; and **DENIED** as to Plaintiff's Eighth Amendment claims of excessive use

of force and verbal abuse. Any remaining portions of Defendants' motion are **DENIED**.

3. Summary Judgment is **GRANTED** with respect to Defendant Nurse Sidra Wilson, and judgment in her favor will be withheld pending adjudication of the action as a whole. <u>See</u> Fed. R. Civ. P. 54.

4. Defendants Bailey, Harper, Garza, Harris, Dugger and Chestnut shall file an answer to the Complaint within **TWENTY-EIGHT (28) DAYS** from the date of this Order.

5. Plaintiff's "Motion Too Rule" (Doc. #36) is **DENIED** as moot.

6. This case is referred to the assigned Magistrate Judge to conduct whatever settlement efforts are necessary.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of March, 2010.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 3/9
c:
The Honorable James R. Klindt, U.S. Magistrate Judge
Michael Blackshear
Ass't Attorney General (Hiers)